IN the MATTER OF the ESTATE OF Joseph
WARUNEK, Deceased: Marvin BIESIADECKI,
Appellant,

v.

Wladystawa STALA and the Estate of Joseph
Warunek, Respondents.

Court of Appeals

*No. 89-2016. Submitted on briefs September 14,
1990.—Decided November 7, 1990.*

(Also reported in 463 N.W.2d 866.)

On behalf of the appellant, the cause was submitted on the brief of *Neil F. Guttormsen* of *Heide, Hartley, Thom, Wilk & Guttormsen* of Kenosha.

On behalf of the respondents, the cause was submitted on the brief of *Thomas P. Aiello* of *Madrigrano, Gagliardi, Zievers & Aiello, S.C.* of Kenosha.

Before Nettesheim, P.J., Scott and Anderson, JJ.

130

SCOTT, J. The will of Joseph Warunek was denied admission to probate because it was found to be an invalid joint will. The personal representative, Marvin Biesiadecki, appeals. We conclude that the will is ambiguous as to whether a joint will was intended and that the evidence demonstrates that a separate will was intended. We reverse the order and remand the cause for admission of the will to probate and further appropriate probate proceedings.

Joseph Warunek died on May 21, 1989. The will sought to be admitted to probate was dated March 10, 1982 and was signed by Joseph and his wife, Mary Warunek, who died December 25, 1988. The will was notarized by Heddy Moskaluk. Moskaluk testified that the Waruneks came to her with a handwritten will drafted in Polish, the Waruneks' native language. They requested Moskaluk to translate and transcribe the document into English. As translated the will provided:

> LAST WILL OF JOSEPH WARUNEK AND MARY WARUNEK
>
> In the event of death of both of us—and the lots have not been purchased up to that time—it is our wish that the lots be purchased and the monuments be erected at the price of $2,000—each.
>
> The funeral to be according to the Catholic rites. 30 Gregorian Masses to be said for each in the St. Casimir Church in Kenosha, Wisconsin, where the funeral should be held.

The will then listed four beneficiaries. It concluded:

> Marvin Biesiadecki residing at 319 W. Madison Ave. Wheaton, IL 60187, is to be the executor of my estate as instructed in the above will.

After deducting the expense of funeral, monuments and the masses, and paying the beneficiaries the remains of the estate goes to the executor Marvin Biesiadecki.

*Estate of Cordes,* 1 Wis. 2d 1, 7-8, 82 N.W.2d 920, 925 (1957), states:

A joint will which expressly or impliedly does not become effective until the death of the survivor is invalid . . ..

A joint will that is not capable of being separated as the separate will of each maker should not be probated . . .. The test seems to be that if the will may be probated separately for each without regard to the fact that the other is living, then the double will is valid.

■■■■

The trial court held that the Warunek will could not be interpreted as the separate will of Joseph and Mary and refused to admit it to probate. When determining whether a will may be probated separately, the court is bound to consider the meaning and legal effect of the language of the instrument in the light of the circumstances existing at the time of its execution. *Id.* at 8-9, 82 N.W.2d at 925. No factual dispute exists here and the primary concern is the legal effect of the will. The determination as to whether the Warunek will was an invalid joint will presents a question of law which we decide *de novo. See Estate of Erbach,* 41 Wis. 2d 335, 340, 164 N.W.2d 238, 241 (1969).

Looking first to the language of the will, we note that the opening clause refers to the "death of both of us." Yet the phrase is ambiguous as to whether it applies only when the survivor of Joseph and Mary dies or in the event of simultaneous death. Further, the reference to the "death of both of us" is ambiguous as to whether it

governs all the provisions in the will such that it was intended that the will operate only on the death of the survivor of Joseph and Mary. The will refers in the singular with respect to the provisions for the payment of the funeral, the named executor and disposition of the remainder of the estate. There are no provisions in the will which can be carried out only after the death of the surviving spouse.

Given the ambiguity in the opening clause and the mandate to consider the language of the instrument in light of the circumstances surrounding execution, we turn to Moskaluk's testimony. We reject the respondents' contention that Moskaluk's testimony cannot be considered by this court because it was put on record only as an offer of proof. With respect to some questions, objections as to Moskaluk's competency to testify directly as to the testators' intent were sustained and the questions were answered by way of an offer of proof. However, the record does not make clear where the offer of proof necessarily ended. Moskaluk gave competent testimony as to the circumstances existing when the will was executed and the Waruneks' understanding of the transcribed document. We therefore consider that testimony.

██

Moskaluk indicated that when the will was executed, the Waruneks owned all their property in joint tenancy and were aware that it would pass to the survivor upon the death of one of them. Joseph had also indicated that they had not purchased grave sites and that he was concerned about providing for such sites in the event that they died simultaneously. Moskaluk also exhibited an understanding of the Waruneks' desire to continue monetary aid to the people in Poland who were named as beneficiaries. The Waruneks had expressed a

desire that the money stated in the will to those beneficiaries was to be paid on the death of either Mary or Joseph. The circumstances surrounding execution of the will evince an intent that the will be the separate will of each Mary and Joseph. Indeed, the trial court stated that it had "no doubt that it was the intent of the deceased and his wife that upon the death of them or the last of them to die that the estate was to be disposed of according to their direction in the document." This comment presumably was based upon the offer of proof. The prohibitions of *Cordes* do not govern and the will should be admitted to probate as the separate will of Joseph.

The respondents assert an additional ground upon which the order denying admission to probate may be sustained. They argue that the will was not witnessed in accordance with sec. 853.03(2), Stats. That section requires a will to be signed by "2 or more witnesses in the presence of the testator and in the presence of each other." *Id.* They claim that Mary could not sign the will in the dual capacity as a testator and witness.

The trial court concluded that the requirements of sec. 853.03, Stats., had been accomplished. We agree. The power to dispose of one's property by will is an important right. In response, it is the policy of courts to sustain a will as legally executed if it is possible to do so consistent with the requirements of the statute. *Estate of White,* 273 Wis. 212, 214, 77 N.W.2d 404, 406 (1956). There is no statutory requirement that a witness declare and serve in that sole capacity. Section 853.03 simply requires a minimum of two witnesses *in addition to* the testator. Likewise, there is no prohibition against a witness also signing as a testator in a joint will so long as there is at least one other witness present. Although this is a double will situation, the co-testators' execution of

the document was in a dual capacity—as testator and as witness. Consequently, the result here does not, as the respondents claim, strain the spirit and intent of sec. 853.03. We note that even the signature of an interested witness does not invalidate a will. Section 853.07(2), Stats.

*By the Court.*—Order reversed and cause remanded for further proceedings.